IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY L. MCGEE<br>TDCJ No. 2173658, | §<br>§<br>§ | |
| Petitioner, | §<br>§ | |
| V. | §<br>§ | No. 3:20-cv-1415-X-BN |
| DIRECTOR, TDCJ-CID, | §<br>§<br>§ | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Rickey L. McGee, a Texas prisoner, was convicted by a jury in Dallas County on two counts of aggravated robbery with a deadly weapon, enhanced with two prior felony convictions. *See State v. McGee*, F-1634499-H, F-1634511-H (Crim. Dist. Ct. No. 1, Dallas Cnty.); Dkt. No. 3 at 2. The jury assessed punishment at 60 years' imprisonment. *See* Dkt. No. 19-1 at 13, 16. The convictions and sentence were affirmed on direct appeal. *McGee v. State*, Nos. 05-18-00473-CR and 05-18-00474-CR, 2019 WL 2366465 (Tex. App. – Dallas 2019, pet ref'd). The Texas Court of Criminal Appeals ("TCCA") refused McGee's petition for discretionary review (PDR) on August 21, 2019. *McGee v. State*, PDR Nos. 0686-19 & 0687-19 (Tex. Crim. App. Aug. 21, 2019).

On December 5, 2019, McGee filed two state habeas applications, one in relation to each conviction. *See* Dkt. No. 19-1 at 19-30; 99-114. The TCCA denied these petitions without written order on March 11, 2020. *See Ex parte McGee*, WR-

87,949-06, 07 (Tex. Crim. App. Mar. 11, 2020). McGee then sought leave to file a writ of mandamus, which the TCCA denied. *See Ex parte McGee*, WR-87-949-08 (Tex. Crim. App. Mar. 11, 2020). He also filed subsequent applications for state habeas relief, which were dismissed without written order pursuant to Texas Code of Criminal Procedure article 11.07, section 4. *See Ex parte McGee*, WR-87-949-09, 10 (Tex. Crim. App. Sept. 2, 2020).

On June 2, 2020, McGee filed this *pro se* application for a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Dkt. Nos. 3, 4. United States District Judge Brantley Starr referred the Section 2254 petition to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The State filed a response to McGee's petition; and McGee filed a reply. *See* Dkt. Nos. 19, 24. McGee also filed a motion to amend his petition, a motion to compel, and a motion for bail. *See* Dkt. Nos. 31, 33, 39.

After examining the petition, motions, and related briefing, the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny McGee's request for habeas relief and related motions.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682

-2-

(citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its

decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists

could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no

further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. …. In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230,

246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

### A. Ineffective Assistance of Counsel ("IAC") Claims

#### (i)     *Procedural Default*

The undersigned understands McGee to claim that his trial counsel was ineffective for failing to: (1) investigate an alibi witness, Curtis Ray Brown; (2) obtain recordings of exculpatory phone calls between McGee and Brown, (3) obtain exculpatory police reports, (4) present critical evidence at the suppression hearing and the hearing on the speedy trial motion, (5) object to illegally seized evidence, (6) challenge the identification of McGee as the robber, (7) challenge improper jury

instructions, (8) object to prosecutorial error or misconduct, (9) be prepared for trial, and (10) object to bolstering. *See* Dkt. No. 4 at 2-8. The State argues that McGee has procedurally defaulted some of his claims, and the undersigned agrees. The undersigned also identifies, *sua sponte*, an unexhausted IAC claim, which is likewise procedurally defaulted.

"[S]tate courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (per curiam). A state petitioner must therefore fully exhaust state remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A); *Loynachan v. Davis*, 766 F. App'x 156, 159 (5th Cir. 2019) ("A federal court may not grant habeas relief unless the petitioner 'has exhausted the remedies available in the courts of the State.'" (quoting 28 U.S.C. § 2254(b)(1)(A))). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989).[1] Texas prisoners must

---

[1] *See also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and 'a desire to protect the state courts' role in the enforcement of federal law.'" (quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quoting, in turn, *Rose v. Lundy*, 455 U.S. 509, 518 (1982)))); *Loynachan*, 766 F. App'x at 159 ("To determine whether a § 2254 petitioner has exhausted a claim, his federal claim should be compared with the claim he raised in state court. 'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.' 'Rather, the petitioner must afford the state court a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."' This reflects the fact in the habeas system, state courts are provided the first opportunity to assess the claim." (citations omitted)).

present their claims to the TCCA in a petition for discretionary review or an application for state post-conviction relief. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986). "A petitioner need merely press a claim through one of these avenues to exhaust that claim. [But, t]o exhaust a claim, it must also be presented in a procedural context in which state courts necessarily review the claim on the merits." *Loynachan*, 766 F. App'x at 159 (citations omitted); *see also Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))).

Related to the exhaustion doctrine is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A procedural default also occurs when the petitioner fails to exhaust claims and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement" would now find the claims procedurally barred." *Id.* at 735 n.1. Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th

Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9.

Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to the procedural default doctrine allows federal habeas review of defaulted claims if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

With that in mind, McGee makes certain IAC claims related to his trial counsel that he did not exhaust and are now procedurally barred. In his first IAC claim directed at trial counsel, McGee argues that his counsel was ineffective in failing investigate an alibi witness: Curtis Ray Brown. *See* Dkt. No. 3 at 9. This witness, according to McGee, had his car at the time of the robbery and, at one point, acknowledged his role in the offense. *See* Dkt. No. 4 at 3. But, in his state habeas petitions, McGee only noted that his counsel "did not interview any witnesses as requested." *See* Dkt. No. 19-1 at 25, 108. He did not specify which witness was not

interviewed or the witness's potential significance. Generally, when evidence (or by analogy, factual allegations) are added to a claim in federal court, the question for purposes of exhaustion is whether they supplement or fundamentally alter the claim presented to the state court. *See Cabellero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)); *see also* 2 Randy Hertz & James S. Liebman, FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 23.3(c), at 982 (4th ed. 2001) ("The controlling standard seems to be that the petitioner exhausts the factual basis of the claim as long as she did not either 'fundamentally alter the legal claim already considered by the state courts' or 'attempt [] to expedite federal review by deliberately withholding essential facts from the state courts.'").

The factual basis of the failure-to-investigate-witness claim presented to the TCCA on habeas review was vague and underdeveloped, and the version of that claim that McGee presents here includes legally significant details not presented to the state habeas petition, so, for purposes of exhaustion, it fundamentally alters the claim from that which was presented in the state habeas petition.

And, while McGee did present this claim in his PDR, he did not include it in his direct appeal. Because it was presented for the "first and only time" in a petition for discretionary review, it does not satisfy the exhaustion requirements of 28 U.S.C. § 2254. *Myers v. Collins*, 919 F.2d 1074, 1075 (5th Cir. 1990) (citing *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989)); *see also Satterwhite*, 886 F.2d at 92 (noting that the presentation of claims on discretionary review to a high state court without filing a direct appeal does not constitute "fair presentation" for exhaustion purposes;

thus, the petitioner did not "exhaust his state remedies by filing a PDR with the Texas Court of Criminal Appeals"). And, because McGee would be prevented from raising this claim to the TCCA now in a subsequent habeas application, and because he fails to show cause and prejudice or a fundamental miscarriage of justice in relation to it, it is procedurally defaulted and should be denied.

Next, in his second IAC claim directed at trial counsel, McGee asserts that his counsel was ineffective for failing to obtain exculpatory phone calls between himself and Brown. *See* Dkt. No. 4 at 2. But McGee failed to present this claim to the TCCA either through his PDR or habeas applications. *See* Dkt. No. 19-1 at 19-30, 99-114, 181-205. It is unexhausted. And, because McGee would be prevented from raising this claim to the TCCA now in a subsequent habeas application, and because he fails to show cause and prejudice or a fundamental miscarriage of justice in relation to it, it is procedurally defaulted and should be denied.

The State did not raise the issue of exhaustion or procedural default as to the failure to obtain exculpatory phone calls; the State does not appear to address this aspect of McGee's failure-to-obtain-exculpatory-evidence claim at all. But the Court can raise exhaustion and procedural default *sua sponte. See Magourik v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998). The time in which to file objections to these findings, conclusions, and recommendation affords McGee an opportunity to respond. *Id.* at 360 ("Once a federal district court elects to raise procedural default *sua sponte*, the court should consider whether justice requires that the habeas petitioner be

afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal.").

Next, in his fourth IAC claim directed at trial counsel, McGee claims that his counsel failed to present critical evidence at the suppression hearing and hearing on his motion for a speedy trial. *See* Dkt. No. 4 at 2. But McGee did not present this claim to the TCCA, either through his PDR or habeas applications. *See* Dkt. No. 19-1 at 19-30, 99-114, 181-205. It is unexhausted.

McGee responds that he presented the failure-to-present-evidence claim in a petition for a writ of mandamus to the TCCA, but a claim is not properly exhausted through a petition for a writ of mandamus. *See, e.g., Mayberry v. Stephens*, No. SA-13-CV-825-XR, 2014 WL 280390, at *4 (W.D. Tex. Jan. 24, 2014) ("An application for a writ of mandamus does not satisfy the [§ 2254] exhaustion requirement because the disposition of the application does not constitute collateral review of the conviction."). And, because McGee would be prevented from raising this claim to the TCCA now in a subsequent habeas application, and because he fails to show cause and prejudice or a fundamental miscarriage of justice in relation to it, it is procedurally defaulted and should be denied.

Next, as to McGee's fifth IAC claim directed at trial counsel, that his counsel was ineffective for failing to object to illegally seized evidence (*see* Dkt. No. 4 at 2), this claim was not presented in the PDR or December 5, 2019 state habeas applications. *See* Dkt. No. 19-1 at 19-30, 99-114, 181-205. McGee argues that he presented it in a subsequent writ to the TCCA on June 8, 2020. But this subsequent

writ was dismissed as an abuse of the writ. *See Ex parte McGee*, WR-87,949-09 (Tex, Crim. App. Sept. 2, 2020). The United States Court of Appeals for the Fifth Circuit has held that the Texas abuse-of-the-writ doctrine can be relied on as an adequate and independent state ground forming the basis for application of the procedural default doctrine. *See Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The IAC claim premised on trial counsel's failure to object to illegally seized evidence is procedurally defaulted and should be denied.

Finally, McGee's eighth IAC claim directed at trial counsel (Dkt. No. 4 at 5) – that his trial counsel failed to object to prosecutorial misconduct in the form of inflammatory closing argument – is also procedurally defaulted. McGee responds that he raised this claim in his PDR, but, even if accurate, it was not raised in his direct appeal, so there was no exhaustion. *See McGee*, 2019 WL 2366465. McGee also argues that he raised this claim in the June 8, 2020 subsequent habeas petition. But, for the reasons discussed above, because the state habeas court dismissed that petition as an abuse of the writ, the claim is procedurally defaulted and should be denied.

The State also contends that McGee procedurally defaulted his appellate IAC claims, but the undersigned disagrees in part. In his federal petition and accompanying memorandum, McGee claims that his appellate counsel was ineffective for failing to: (1) argue that the trial court abused its discretion when it denied McGee's motions to suppress and for a speedy trial, (2) argue that McGee's trial counsel was ineffective, and (3) file a motion to have the case sent to the "nearest

court of appeals" due to potential bias issues. *See* Dkt. No. 4 at 6-7. In his state habeas petition, WR-87,949-06, McGee complained that his appellate counsel failed to argue the issues he specified in that application. *See* Dkt. No. 19-1 at 109. Those issues included the trial court denying McGee's motion to suppress and motion for a speedy trial as well as the ineffectiveness of McGee's trial counsel for the reasons specified in the state habeas petition. *See id.* at 106, 108-109. Thus, McGee did raise his first and second appellate counsel IAC claims in his state habeas petition, and those claims are not procedurally defaulted.

But McGee did fail to raise the third appellate IAC claim concerning his counsel's failure to file an appellate transfer motion. As he would be unable to raise the appellate-transfer claim now in a subsequent habeas petition, and because he does not show cause and prejudice or a fundamental miscarriage of justice in relation to it, McGee's third appellate IAC claim is procedurally defaulted.

### (ii)    *Failure to Obtain Exculpatory Police Reports*

In his remaining IAC claims, McGee's alleges that his trial counsel was ineffective for failing to: (1) obtain exculpatory police reports, (2) challenge the out-of-court and in-court identifications of him as the robber, (3) challenge improper jury instructions, (4) be properly prepared for trial, and (5) object to bolstering. *See* Dkt. No. 4 at 2.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show

that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been

established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense

counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'" (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[2]

---

[2] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

Turning to the analysis, McGee claims that his trial counsel was ineffective for failing to obtain an exculpatory police report. McGee argues that the subject police report contained a vague description of the culprit – a black male wearing a hat – and that paucity of factual detail, as well as the fact that the robber was wearing a hat, could have been used by his trial counsel to raise doubts as to the victims' later identification of McGee as the robber in a photo line-up. The report also contains the statement of the victims' concerning the color of the gun, which McGee contends differs from the gun that was introduced at trial; specifically, in the police report, the victims pegged the gun as "pink at the bottom" and "gun metal on the top," while McGee claims that the gun introduced at trial had a lavender base with a black top. *See* Dkt. No. 4 at 3; Dkt. No. 21-38 at 59.

The State responds that these reports were part of its file and were made available to the defense. *See* Dkt. No. 19 at 29. It is true that counsel has no duty to file pre-trial discovery motions when the prosecution has established an open file policy that makes the filing of discovery motions pointless. *See Smith v. Maggio*, 696 F.2d 365, 367 (5th Cir.), *cert denied*, 464 U.S. 831 (1983). But nothing in the record confirms that the State had an open file policy here. The State points only to a statement from counsel in a brief opposing McGee's state habeas application that "[a] review of the State's file reveals the offense reports are a part of the State's file and were made available to the defense." Dkt. No. 19-1 at 43.

Nevertheless, the state habeas court's denial of this claim was not an unreasonable application of *Strickland* because McGee cannot show prejudice. First,

even if the description of the robber in the police report was vague, both victims identified McGee in photo line-ups and testified that they saw his face during the robbery. *See* Dkt. No. 21-8 at 32, 44. Second, the difference between the victims' description of the gun in the police report as pink and McGee's description of the gun introduced into evidence as lavender approaches "inanity" and does not establish a reasonable probability that, had McGee's counsel emphasized this supposed discrepancy, the result of the proceedings would have differed. *See Jones v. Cain*, 227 F.3d 228, 230-31 (5th Cir. 2000) (refusing to find ineffective assistance on a failure-to-impeach theory where the differences between the witness's statements in a police report and statements at trial "approach[ed] inanity"). The state habeas court did not unreasonably apply *Strickland* in denying McGee's failure-to-obtain-exculpatory-evidence claim premised on the police report.

### (iii)    *Failure to Object to Identifications*

Liberally construing McGee's petition, he appears to argue that the out-of-court and in-court identifications of him as the robber violated his due process rights under the Fifth and Fourteenth Amendments and that his trial counsel was ineffective in failing to object to these identifications or to have a "pretrial hearing on suggestiveness." Dkt. No. 4 at 4.

"The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures." *United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009) (quoting *United States v. Guidry*, 406 F.3d 314, 319 (5th Cir. 2005)). The admissibility of identification evidence is governed by a two-step test:

First, the court determines whether the identification procedure was impermissibly suggestive, and second, if it was, the court ask whether the procedure posed a "very substantial likelihood of irreparable misidentification." *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997) (citing *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993)). If both questions are answered in the affirmative, the identification is inadmissible. *Id.*

Initially, the undersigned observes that there was nothing improper or impermissibly suggestive about the out-of-court identification procedure used here: a photo line-up shown to the victims. The line-up included six photographs of African-American men who matched the general physical description provided to the police following the robbery. *See* Dkt. No. 21-41 at 70; Dkt No. 21-44 at 61-80. All men in the photographs looked similar in terms of appearance and age, and all wore civilian clothing. *See* Dkt. No. 21-44 at 61-80. Neither victim was given any suggestions or additional information. *See* Dkt. No. 21-8 at 69, 71. "There was nothing unduly suggestive or otherwise improper about this procedure." *Hicks v. Thaler*, No. 3-08-cv-1839-N-BD, 2010 WL 5769527, at *2 (N.D. Tex. Dec. 20, 2010), *rec. accepted* 2011 WL 476511 (N.D. Tex. Feb. 8, 2011) (rejecting IAC claim premised on an out-of-court photo identification where the victim was shown a photo line-up of six men that matched the physical description provided to the police and all men pictured in the photos looked similar in terms of appearance and age and wore civilian clothing; (citing *Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991), *cert. denied*, 502 U.S. 1113 (1992) (pretrial identification procedures are constitutional unless the

identification was so unnecessarily suggestive as to give rise to a substantial likelihood of misidentification); *Davis v. Thaler*, No. 4-09-cv-434-A, 2010 WL 549787, at *3-4 (N.D. Tex. Feb. 16, 2010) (photo array of six African-American males of similar age and build with similar characteristics and appearance was not unduly suggestive)). And because the out-of-court identification procedure was not impermissibly suggestive, it is not necessary to consider whether the suggestiveness led to a substantial likelihood of irreparable misidentification. Thus, trial counsel was not deficient for failing to challenge the out-of-court identification procedure, as any challenge would have been futile. *See Kock v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). And, because the out-of-court identification procedure was not impermissibly suggestive, McGee cannot show that it tainted the in-court identification of him. *See Hicks*, 2010 WL 5769527, at *2 ("Having determined that the photo line-up was not impermissibly suggestive, petitioner cannot show that the line-up tainted the in-court identification testimony of Hall and two witnesses to the One Stop robbery – Cornell Cooper and Aleo Guerra.") (footnote omitted); citing *Neil v. Biggers*, 409 U.S. 188, 196-97 (1972) (in-court identification may be challenged by showing that the identification was tainted by improper identification procedures)).

In sum, the state habeas court did not unreasonably apply *Strickland* to McGee's claim that his trial counsel was ineffective for failing to object to the out-of-court or in-court identifications.

### (iv)    *Failure to Object to Jury Instructions*

McGee claims that his trial counsel was ineffective for failing to object to a jury charge which differed from the indictment. According to McGee, the jury charge defined robbery as follows:

> a person commits the offense of robbery if, in the course of committing theft, as that term is defined in these instructions, and with intent to obtain and maintain control of property of another, he intentionally or knowingly causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death.

Dkt. No. 4 at 5.

But the indictments charged him with threatening <u>and</u> placing the victims in fear of imminent bodily injury or death. *See id.* And McGee claims that this variance – the use of a disjunctive "or" in the jury charge compared with the conjunctive "and" in the indictments – violates his "Sixth Amendment right to a fair trial." *See id.*

The undersigned cannot agree. "It is appropriate for the indictment to allege different methods of committing the offense in the conjunctive and the jury to be charged in the disjunctive." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 2011). Thus, any objection to the variance between the indictments and jury instructions would have been futile, and, again, counsel is not required to make a meritless objection.

McGee also argues that the instruction on reasonable doubt was incorrect and relieved the State of its burden. The instruction stated, in part, that "[i]t is only required that the prosecution proof exclude all reasonable doubt concerning the Defendant's guilt." Dkt. No. 4 at 5; Dkt. No. 21-2 at 224. Again, the undersigned

cannot accept this argument. The propriety of this instruction has been upheld repeatedly. *See*, *e.g.*, *Backusy v. Director*, No. 3:19-cv-2913-N-BN, 2021 WL 1725535, at *8 (N.D. Tex. Mar. 25, 2021), *rec. accepted* 2021 WL 1720211 (N.D. Tex. Apr. 30, 2021), *appeal filed* May 24, 2021 (citing *Pryor v. Quarterman*, Civil Action No. 3:05-cv-2102-G, 2006 WL 363467, at *4 (N.D. Tex. Dec. 13, 2006); finding that identical language did not violate constitution; *Horton v. Director*, TDCJ-CID, Civil Action No. 4:08-cv-380, 2011 WL 5433998, at *12 (E.D. Tex. Oct. 11, 2011); same)).

McGee's counsel was not ineffective for failing to object to the jury instructions, and the state habeas court's rejection of the failure-to-object-to-jury-instructions IAC claim was not an un unreasonable application of *Strickland*.

### (v)    *Failure to be Prepared for Trial*

McGee claims that his counsel was not prepared for trial because he only met with McGee twice and lacked a defense strategy. *See* Dkt. No. 4 at 6. But McGee's claim that his trial counsel lacked a defense strategy, without more, is too conclusory to warrant habeas relief. *See Koch*, 907 F.2d at 530 ("Although *pro se* habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"; (citations omitted)). And McGee does not explain how the outcome of his proceedings would have differed had he met with counsel more, so he does not show prejudice. The state habeas court's denial of this IAC claim was not an unreasonable application of *Strickland*.

### (vi)    *Failure to Object to Bolstering*

McGee claims that his trial counsel should have objected to bolstering. *See* Dkt. No. 4 at 2. The factual predicate of the claim appears to be that, because one of the victims wrote on his Admonition Form "I believe he is the one who robbed me," this constituted a "tentative identification" of McGee, and the State's later question to the photo-lineup-administering-and-investigating detectives whether this victim identified McGee in the photo line-up (to which the detectives responded in the affirmative), was bolstering.

In *Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993), the TCCA explained:

> "Bolstering" may perhaps be understood a little more precisely to be any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *See* Rule 401, *supra.* Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered "bolstering."

*Id.* at 819-20. Here, the detectives' testimony that a victim identified McGee in a photo line-up – though corroborating the victim's statement on the admonition form – has substantive relevance because it makes a fact of consequence – the positive identification during a photo line-up – more probable. The detectives' testimony was not introduced for the <u>sole</u> purpose of bolstering the victim. There was no bolstering under Texas law, and any objection on those grounds would have been futile. The state habeas court did not unreasonably apply *Strickland* in rejecting this claim.

### (vii)   Ineffective Assistance of Appellate Counsel

As to his non-procedurally-defaulted appellate counsel claims, McGee that his appellate counsel was ineffective for failing to argue that the trial court improperly denied his suppression and speedy-trial motions, and for failing to argue that his trial counsel was ineffective. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Counsel has a professional duty to choose among potential issues, according to his or her judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *See Jones*, 463 U.S. at 752. To prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal was objectively unreasonable. *See United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citing *Strickland*, 466 U.S. at 687).

McGee fails to show that the state habeas court unreasonably applied that standard in rejecting his appellate-counsel IAC claims. As to the speedy-trial motion, as discussed below, the state habeas court found that McGee's speedy trial rights were not violated, and this determination was not unreasonable, so it was likewise not an unreasonable application of *Strickland* for the state habeas court to reject McGee's IAC claim premised on his counsel's failure to raise the argument on direct appeal. The same goes for the trial counsel IAC claims: the state habeas court rejected these claims, and, as discussed above, it was not an unreasonable application of *Strickland* for them to do so. And so, it was likewise not an unreasonable application

of *Strickland* for the state court to reject the claim that these arguments should have been raised on appeal. Further, IAC claims are often presented in state habeas writs as opposed to direct appeal because they can be developed through a post-conviction evidentiary hearing. *See Lopez v. State*, 343 S.W.23d 137, 143 (Tex. Crim. App. 2011) ("This Court has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus.") (citations omitted). Thus, McGee's appellate counsel's decision to forego the speedy trial and trial-counsel IAC claims on direct appeal was not constitutionally defective.

As to McGee's claim that his appellate counsel should have challenged the arrest warrant, it was not an unreasonable application of *Strickland* for the state court to deny this claim because it lacks merit. McGee argues that the affidavit supporting the arrest warrant lacked sufficient details to enable the judge to find probable cause. The affidavit stated, in pertinent part, that "Victim Freeman was able to get the license plate to the suspect vehicle and after checking that license plate, it returns to the defendant, who has an extensive criminal history and is a documented gang member, and matched the description provided by the victims." Dkt. No. 5 at 2-3. This is sufficient for a probable cause determination. *See*, *e.g.*, *United States v. Baldwin*, 644 F.2d 381, 384 (5th Cir. 1981) (finding probable cause to arrest on suspicion of robbery where defendant's truck was positively identified as the getaway vehicle and witnesses had provided police descriptions generally fitting the defendants); *United States v. Breedlove*, 444 F.2d 422, 424 (5th Cir. 1971) (an

accurate description of a getaway vehicle and occupants constitutes probable cause for traffic stop).

Second, McGee claims that the warrant was deficient because there was no specific determination of probable cause by the magistrate. But the magistrate did specifically find probable cause for the arrest warrant. *See* Dkt. No. 21-11 at 7.

And McGee finally argues that the warrant is defective because it only lists the victims' last names. But McGee does not explain why this would vitiate probable cause, and the undersigned can find no authority saying that it should.

The state habeas court did not unreasonably apply *Strickland* in rejecting McGee's appellate counsel IAC claims.

### B. Fourth Amendment Claim

McGee claims that evidence – specifically, a gun found during a search of his vehicle – was obtained in violation of his Fourth Amendment rights and then improperly admitted at trial. Dkt. No. 3 at 8. Again, McGee's argument focuses on the affidavit supporting the arrest warrant pursuant to which the search occurred. The State argues in response that this claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976). The undersigned agrees.

In *Stone*, the Supreme Court held that where a petitioner received a full and fair opportunity to litigate a Fourth Amendment claim, he may not receive federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. *See id.* at 494. The Fifth Circuit has interpreted "an opportunity for full and fair litigation" to mean just that: "an opportunity." *Caver v.*

*Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

McGee argues here that he was not afforded an opportunity for full and fair litigation of this claim, but the record shows otherwise. The trial court held a suppression hearing, and McGee was able to raise the Fourth Amendment issue again on direct appeal and in his state habeas applications. *See* Dkt. 21-7 at 20. The fact that McGee might disagree with how those courts came out on the Fourth Amendment issue or the fact that McGee questions the competency of his attorneys in dealing with the issue are irrelevant considerations in the *Stone* context. *See*, *e.g.*, *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) ("The fact that Janecka may disagree with the district court's decision to overrule his objection is not sufficient to overcome the *Stone* bar); citing *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978)); *Moreno v. Dretke*, 362 F.Supp.2d 773, 795 (W.D. Tex. 2005) ("That his trial or appellate counsel, or both, may have failed to take the steps necessary to properly preserve that claim for state appellate review does not render the *Stone* bar inapplicable.").

### C. Speedy Trial

McGee claims that his right his Sixth Amendment right to a speedy trial was violated. "The Sixth Amendment guarantees a defendant 'the right to a speedy and public trial.'" *Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (quoting

U.S. CONST. amend. VI). This right "applies to the states via incorporation by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012)). And whether this right has been violated is "a mixed question of law and fact," which in the current context – federal habeas review of the state court's rejection of a speedy-trial claim – triggers "the deferential standard of 28 U.S.C. § 2254(d)(1)." *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011) (per curiam) (footnotes omitted). Thus, "[o]n habeas review, a federal court must 'give the widest latitude to a state court's conduct of its speedy-trial analysis.'" *Martin v. Director, TDCJ-CID*, Civ. A. No. 1:08cv669, 2015 WL 10793746, at *3 (E.D. Tex. Aug. 3, 2015) (citing *Amos*, 646 F.3d at 205). "As long as there is any objectively reasonable basis on which the state court could have denied relief, the decision of the state court must be respected." *Id.*

> "Very few petitioners" can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, [a federal court's] "always-substantial deference is at an apex." In resolving speedy trial issues, [the Court should] consider: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." The factors are guides that require a delicate balancing.

*Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05 (citation omitted); *see also Speer v. Lumpkin*, 824 F.App'x 240, 244 (5th Cir. 2020) ("Because [the speedy trial] right is 'amorphous,' 'imprecis[e],' 'necessarily relative,' and 'slippery,' the Supreme Court established 'a balancing test, in which the conduct of both the prosecution and the defendant are weighed.' Relevant factors include the length of the delay, the reason for it, the defendant's diligence in asserting the right, and whether the delay

prejudices the defendant." (quoting *Barker v. Wingo*, 407 U.S. 514, 522 529-30 (1972), then citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009))). The minimum delay necessary to trigger a *Barker* analysis is one year. And, "[i]f this threshold showing is made, the court must examine the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis, because 'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

Turning to the analysis, the length of the delay between arrest and trial was only thirteen months. So, while the first *Barker* factor favors McGee and warrants analysis of the other *Barker* factors, it does so only slightly. *See*, *e.g.*, *Amos*, 646 F.3d at 206-07 (noting that a delay must persist for at least eighteen months over and above one year for the first *Barker* factor to strongly favor the accused and finding that sixteen-month delay did not weigh heavily in favor of the accused; (citing *Goodrum*, 547 F.3d at 258; *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009) (collecting cases)).

Turning to the second factor, "reasons for delay generally fall into three categories: (1) compelling Government necessity in the face of a complicated prosecution, (2) lack of timeliness (or actual malfeasance) on part of the Government, and (3) delay caused by the defendant." *United States v. McCoy*, 786 F.Supp.2d 1216, 1224 (S.D. Tex. 2011). "[A] deliberate delay to disadvantage the defense is heavily weighed against the state." *Goodrum*, 547 F.3d at 258. "[D]elays explained by valid

reasons or attributable to the conduct of the defendant weigh in favor of the state."
*Id.*

Here, the State – pointing to McGee's motions to substitute counsel and to appear *pro se* – contend that McGee's actions "were responsible for a good deal of delay in getting his case to trial." Dkt. No. 19 at 19. This appears to be accurate. At the least, there is no indication from the record that the thirteen-month delay was attributable to a deliberate delay on behalf of the State.

The third *Barker* factor considers whether a petitioner diligently asserted his right to a speedy trial. *See Amos*, 646 F.3d at 207. McGee filed a *pro se* motion for a speedy trial on December 29, 2016. The State concedes that this factor weighs in McGee's favor.

Turning to the prejudice factor, the Court must assess prejudice "in the light of the interest of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These interests include: (1) prevention of oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility of impairment to the defense. *Id.* Unless the first three factors weigh heavily in favor of the defendant, or the delay is at least five years, the burden is on the petitioner to put forth evidence of actual prejudice. *See Divers v. Cain*, 698 F.3d 211, 219 (5th Cir. 2012). The delay in this case was less than five years, and the other *Barker* factors do not weigh heavily in favor of McGee, so he bears the burden of showing actual prejudice.

To meet his burden, McGee focuses on two things. First, that a crucial alibi witness, Curtis Ray Brown, died before trial on June 10, 2017. McGee also claims that he experienced anxiety and concern leading up to the trial, noting that he wrote the trial judge a letter on September 12, 2017, discussing his pre-trial anxiety, as well as medications he was taking to suppress the anxiety and depression. *See* Dkt. No. 24 at 6. He was also diagnosed with anxiety and depression while in Dallas County Jail. *See id.*

In *United States. v. Neal*, 27 F.3d 1035, 1043 (5th Cir. 1994), the Fifth Circuit rejected a speedy trial claim premised on the death of two witnesses, noting that the petitioner did not explain "why the facts to which the lost witnesses would have testified could not have been elicited from other witnesses," or why "neither he nor his attorney took steps to preserve the witnesses' testimony for trial." (citing *Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993), *cert denied*, 510 U.S. 1167 (1994) ("Even assuming these individuals could have and would have provided exculpatory testimony, either Robinson or his attorneys should have taken adequate steps to preserve their testimony for trial."; (citing, in turn, *Davis v. Puckett*, 857 F.2d 1035, 1041 (5th Cir. 1988)). The same is true here: McGee does not explain why Brown's testimony could not have been elicited through other witnesses, and neither McGee nor his counsel took steps to preserve Brown's testimony.

And finally, as to McGee's anxiety-related argument, "[t]he Supreme Court has suggested that living 'under a cloud of suspicion and anxiety' for four years constitutes only 'minimal' prejudice absent an effect on a defendant's trial." *Laws v.*

*Stephens*, 536 F. App'x 409, 414 (5th Cir. 2013) (citing *Barker*, 407 U.S. at 534). McGee has not shown that his anxiety affected his trial. In short, it was not objectively unreasonable for the state habeas court to reject McGee's speedy trial claim, so, on habeas review, this Court should likewise reject it.

### D. Insufficient Evidence

McGee claims that there was insufficient evidence to support his aggravated robbery convictions. The State argues that this claim is procedurally barred because McGee only raised it in his direct appeal and not in his PDR, and the undersigned agrees. Under Texas law, a sufficiency of the evidence claim may only be raised on direct appeal and may not be raised in state habeas proceedings. *See West v. Johnson*, 92 F.3d 1385, 1398, n. 18 (5th Cir. 1996) (collecting cases). Because a prisoner must present his claim to the TCCA in some fashion, such insufficiency-of-evidence claims must be presented through a PDR. Because McGee failed to present his insufficiency-of-evidence claim to the TCCA in his PDR, it is barred absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman* 501 U.S. at 750. To make that showing, McGee argues that his appellate counsel was defective in presenting the insufficiency-of-evidence claim on direct appeal. But this does not explain why the claim was not presented in a PDR. McGee also claims that he raised the insufficiency-of-evidence claim in two state habeas writs filed after December 5, 2019. But, as explained, a sufficiency-of-the-evidence claim may not be raised through a Texas state habeas petition, much less a petition that is successive. McGee's insufficiency-of-evidence claim is procedurally defaulted and should be denied.

### E. Prosecutorial Misconduct

McGee raises various prosecutorial misconduct claims. First, he argues that the State erred in failing to file a proper notice to join his two criminal cases. *See* Dkt. No. 4 at 8. But, as the State notes, McGee did not raise this claim to the TCCA, either in a PDR or properly-filed state habeas application. Because McGee would not be able to present this claim to the TCCA now, and because he does not show cause or prejudice or a fundamental miscarriage of justice in relation to it, it is procedurally defaulted.

Second, McGee claims that the State engaged in prosecutorial misconduct in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), in withholding the police report from the defense. *See* Dkt. No. 4 at 9. "[T]he suppression by the prosecution of evidence favorable to an accused … violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady*, 373 U.S. at 87). To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Green*, 527 U.S. 263 281-82 (1999). Evidence is material where there exists a "reasonable probability" that had it been disclosed the result at trial would have been different. *Banks*, 540 U.S. at 699. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). And, under the AEDPA,

this Court does not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). Rather, this Court must decide whether the state court's *Brady* determination was contrary to or involved an unreasonable application of federal law. *Dickson v. Quarterman*, 462 F.3d 470, 477-78 (5th Cir. 2006).

The State contends that the police reports were not withheld at all. But, as discussed above in relation to the similar IAC claim, the lack of evidence in the record confirming that these reports were a part of the State's file makes this argument difficult to evaluate.

Nevertheless, the state habeas court could have reasonably rejected McGee's *Brady* claim for a lack of materiality. As discussed above, both victims testified that they saw the robber's face and identified him in photo line ups. And McGee fails to show a reasonable probability that the result of the proceedings would have been different had his attorney presented evidence that the robber wore a hat or argued that the victims' description of the robber in the police report was vague. And, to the extent there is any difference between the victims' description of the gun in the police report and at trial, it is negligible and not the kind of impeachment evidence that could undermine confidence in the outcome of the proceedings – especially with multiple eyewitness identifications of McGee as the robber and the fact that the vehicle used in the robbery was registered to him. The state habeas court's finding

that no *Brady* violation occurred was neither contrary to nor an unreasonable application of clearly established federal law.

And, finally, McGee claims the State engaged in prosecutorial misconduct by presenting an inflammatory closing argument. But McGee failed to object to the State's closing argument. "The Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar." *Dowthitt*, 230 F.3d at 752.

McGee argues that his attorneys' failure to object to the State's argument supplies cause for the default. Ineffective assistance of counsel can be cause for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). But "the exhaustion doctrine … generally requires that the claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* Here, McGee did not exhaust the failure-to-object-to-closing-argument IAC claim; thus, that claim cannot serve as cause excusing a procedural default absent cause and prejudice or a fundamental miscarriage of justice in relation to it, and McGee does not make that argument.

In short, pursuant to the Texas contemporaneous objection rule, McGee's prosecutorial misconduct claim premised on improper closing arguments is procedurally defaulted and should be denied.

### F. Motion to Amend

McGee also filed a motion to amend his federal habeas petition (Dkt. No. 31) to include the following claims: (1) that his trial counsel was ineffective for failing to

object on Fourth Amendment grounds to the affidavit supporting the arrest warrant; and (2) that the prosecution engaged in misconduct by eliciting perjury from a detective as to whether one of the victims identified McGee as the robber in a photo line-up. *See* Dkt. No. 31 at 2-3. But the Court should deny leave to amend because amendment would be futile. *See Sixta v. Quarterman*, Civ. A. No. H-07-0118, 2007 WL 2746951, at *2 (S.D. Tex. Sept. 19, 2007) ("[U]nder Rule 15, this court must grant petitioner's motion to amend unless there is a substantial reason to deny leave to amend. Futility of amendment is one such reason."; (citations and internal quotation marks omitted)).

Specifically, McGee failed to fairly present these claims to the TCCA as the highest available state court for review, which means that they are unexhausted. *See* Dkt. No. 19-1 at 19-30, 99-114, 181-205. And this failure to exhaust is ample reason for this Court to find futility. *See*, *e.g.*, *Porter v. Davis*, No. 3:16-cv-3095-K-BN, 2017 WL 2869919, at *7 (N.D. Tex. June 12, 2017), *rec. accepted* 2017 WL 2861789 (N.D. Tex. July 5, 2017) ("Failure to exhaust, moreover, is the reason for this Court to deny Porter's pending motions for leave to amend as futile to the extent, through those motions, Porter seeks to add claims that have not been fairly presented to the CCA."; (citing *Sixta*, 2007 WL 2746951, at *2. ("Petitioner's motion to amend unexhausted claims is futile because, if granted, it would require this court to dismiss his entire amended petition." (further citations omitted)).

And McGee has not shown that the limited stay-and-abeyance procedure authorized in *Rhines v. Weber*, 544 U.S. 269 (2005), should be applied here. *See*

*Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010) ("When a petitioner brings an unexhausted claim in federal court, stay and abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim is not plainly meritless; and there is no indication that the failure was for purpose of delay.").

### G. Other Motions

McGee filed a motion to compel. *See* Dkt. No. 33. McGee contends that the Clerk of this Court invertedly sent him an order denying an evidentiary hearing in another case. *See id.* But there was also "material" that contained McGee's "name-number-civil number" and an apparent reference to a "document 303." *Id.* McGee asked the Court "to have the Clerk re-send this material entitled Document 303 at its earliest convenience," as well as a "grace period in the event he wish [sic] to respond-object on appeal any decisions." *Id.*

The docket sheet shows that the Clerk tried to mail docket number 30 – which was an order denying McGee's motion for an extension of time to respond to a not-yet-issued FCR (see Dkt. No. 30) – but mistakenly sent a document with the incorrect docket number. The Clerk's Office then sent McGee a corrected copy of the order. *See* Dkt. No. 32. Thus, McGee's motion to compel appears to be moot and should be denied.

McGee also filed a document entitled "Motion for Bail," in which he reiterates the reasons why he believes habeas relief is appropriate and asks this Court to "grant

him bail." *See* Dkt. No. 39. But as explained, federal habeas relief for McGee is inappropriate, so his motion for bail should be denied.

## Recommendation

The Court should deny McGee's application for a writ of habeas corpus, motion to amend, motion to compel, and motion for bail.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: January 10, 2022.

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE